IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **RICK L. SPARKS, RACHEL SPARKS and RACHEL F. SPARKS LIVING TRUST**<br><br>　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>**SAXON INVESTMENTS. LLC, RYAN ROTHE, JAMES MECHAM, PATRICK H. HANSEN, STEPHEN LINGE, HANSEN & MECHAM INVESTMENTS, LLC, BANCWEST INVESTMENT SERVICES, INC., and BANK OF THE WEST,**<br><br>　　　　　　　　　Defendants. | **MEMORANDUM DECISION & ORDER**<br><br>Case No.  2:09CV151DAK |

　　　　This matter is before the court on Defendants BancWest Investment Services Inc. and Bank of the West's ("BOTW") Motion to Compel Arbitration and Dismiss, or Alternatively, Stay Proceedings Pending Arbitration.  The motion was joined in by Defendant Stephen Linge.  The court held a hearing on the motion on August 19, 2009.  At the hearing, Plaintiffs were represented by Blake D. Miller and Lauren Y. Parry, Defendants BancWest and BOTW were represented by Erik A. Christiansen, Defendant Stephen Linge was represented by Mark W. Pugsley, and the Hansen and Mecham Defendants were represented by Brennan Moss.  The court has carefully considered the pleadings, memoranda, and other materials submitted by the parties, as well as the law and facts relating to the motion.  Now being fully advised, the court renders the

following Memorandum Decision and Order.

## BACKGROUND

The Plaintiffs, Rick and Rachel Sparks and the Rachel F. Sparks Living Trust (collectively "the Sparks"), invested $300,000 on the advice of Defendant Stephen Linge ("Linge"), while he served as an employee of BancWest Investment Services, Inc. ("BancWest"). BancWest is a subsidiary of Bank of the West ("BOTW"). The Sparks allege that the company Linge encouraged them to invest in, which was not an approved company of BancWest or BOTW, lost the Sparks' investment in the stock market.

Because none of the Defendants responded to their demands for repayment of the money, the Sparks brought the present lawsuit alleging thirteen causes of action against various defendants. The claims asserted against BancWest and BOTW include claims for unsuitable trading, violation of § 20(a) of the Exchange Act, violation of the Utah Uniform Securities Act, Utah Code Annotated § 61-1-1 *et seq.*, and respondeat superior. The claims brought against Linge include claims for fraud and/or aiding and abetting fraud, negligent misrepresentation, breach of fiduciary duty, civil conspiracy, violation of § 10(b) of the Exchange Act and Rule 10(b)-5, unsuitable trading, and violation of the Utah Uniform Securities Act.

The Sparks executed a New Account Application with BancWest. The New Account Application states that "[s]ecurities offered through BancWest Investment Services and/or held by Pershing are subject to a Pre-Dispute Arbitration Agreement and a New Account Agreement. The Pre-Dispute Arbitration Agreement is on Page 4, Paragraphs 13 and 14 of the New Account Agreement. I/We acknowledge receipt of the Pre-Dispute Arbitration Agreement and the New Account Agreement. Further, I/We certify that I/We was/were provided an

opportunity to read the Pre-Dispute Arbitration Agreement [and] New Account Agreement." Directly above the signature lines on the application, it states: "I/We agree to be bound by such terms and conditions of the agreement applicable to this account."

In the New Account Agreement, Paragraphs 13 and 14, it states:

> 13.  <u>Arbitration Disclosures</u> – This agreement contains a predispute arbitration clause.  By signing an arbitration agreement the parties agree as follows: all parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.  Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.  The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.  The arbitrators do not have to explain the reason(s) for their award.  The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.  The rules of some arbitration forums may impose time limits for bringing a claim in arbitration.  In some cases, a claim that is ineligible for arbitration may be brought in court.  The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.
>
> 14.  <u>Arbitration Agreement</u>  – Any controversy between you and us shall be submitted to arbitration before the national Association of Securities Dealers, Inc.

## DISCUSSION

Based on the provisions of the New Account Application and New Account Agreement between the Sparks and Bancwest, BancWest moves to compel arbitration of the

Sparks claims against it.  Linge, who is also a signatory to the agreements, also seeks arbitration of the Sparks' claims against him.  Because it is not a signatory to the agreements, BOTW seeks a stay of the case against it pending resolution of the FINRA arbitration proceedings.

I. *Motion to Compel Arbitration of Claims Against BancWest and Linge*

"[W]hen a contract contains an arbitration clause, there is a presumption in favor of arbitrability."  *Local 5-857 Paper, Allied-Industrial, Chemical Energy Workers Int'l Union v. Conoco Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003).  "The Arbitration Act provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S.  "

The Sparks, however, contend that the arbitration provisions relied on by Bancwest do not apply to the present controversy.  The Sparks rely on the introductory sentence of the New Account Application, which reads: "Securities offered through BancWest Investment Services and/or held by Pershing are subject to a Pre-Dispute Arbitration Agreement and a New Account Agreement."  The Sparks argue that according to this sentence the only arbitrable disputes are those involving "securities" and the present dispute does not fall within the scope of the term "securities."

However, BancWest argues that the Sparks' narrow reading of the introductory phrase disregards the language contained in all the documents that comprise the parties' agreement. The New Account Application directs the parties to the Pre-Dispute Arbitration on Page 4, Paragraphs 13 and 14 of the New Account Agreement.  These paragraphs read, in pertinent part, as follows:

> All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed . . . Any controversy between you and us shall be submitted to arbitration before the National Association of Securities Dealers Inc.

*Id.*

The language of paragraphs 13 and 14 indicates that the parties agreed to arbitrate "any controversy" between themselves and BancWest. In addition, BancWest argues that even if the court found the language of the agreements to be ambiguous as to whether the arbitration agreement included only disputes dealing with securities or all disputes, the court must view any ambiguity in favor of arbitration.

The Tenth Circuit has ruled that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Williams v. Imhoff*, 203 F.3d 758, 764 (10th Cir. 2000). "'[A]n order to arbitrate the particular grievance clause should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Local 5-857*, 320 F.3d at 1126 (quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (stating also that "[d]oubts should be resolved in favor of coverage"). Therefore, even if the court found that there was ambiguity between the introductory sentence of the New Account Application and the language in the Pre-Dispute Arbitration Agreement, the court must favor arbitration.

The court concludes that the agreements are sufficiently clear to manifest the parties intent and agreement that any controversy be arbitrated. The related documents should properly be read together and, although there may be some ambiguity as to whether the

requirement to arbitrate applies only to securities or to any controversy, any such ambiguity must be resolved in favor of arbitration.  Accordingly, the court concludes that based on the language of the parties' agreement, all signatories to the agreements are required to arbitrate any controversy.

Even if there was not a clear contractual agreement to arbitrate, this court has recognized that in the securities context "[r]ecent cases . . . almost uniformly hold that 'even if "there is no direct written agreement to arbitrate . . . , the [NASD] Code serves as a sufficient agreement to arbitrate, binding its members to arbitrate a variety of claims with third-party claimants."'" *See World Group Sec. Inc. v. Sanders*, 2006 WL 1278738, *4 & n.17 (D. Utah May 2006) (citations omitted).  Members of FINRA are bound through the NASD Code of Arbitration to arbitrate disputes through FINRA arbitration.   Rule 12200 of the NASD Code provides that parties must arbitrate under the Code if:

> 1. Arbitration under the Code is either:
>    (a) Required by a written agreement, or
>    (b) Requested by the customer:
> 2. The dispute is between a customer and a member or associated person of a member; and
> 3. The dispute arises in connection with the business activities of the member or the associated person; except disputes involving the insurance business activities of a member that is also an insurance company.

BancWest and Linge assert that they meet the three standards under the NASD Code 12200 and, therefore, should be allowed to defend the claims in FINRA arbitration. BancWest and Linge are signatories to a written agreement with the Sparks, the Sparks were customers of Bancwest and Linge, who was an associated person of BancWest, and the claims against BancWest and Linge are connected with their business activities.

The Sparks argue that BancWest has denied any type of customer relationship with the Sparks. They believe that BancWest's denial of its relationship with the Sparks is sufficient evidence to prove that BancWest does not meet the second element. The Sparks claim that until BancWest withdraws its argument that the Sparks are not its customers or the court rules on this claim and rejects the position advocated by BancWest, arbitration should be denied.

BancWest withdrew any previous denial of the Sparks being its customers during the briefing of the present motion. BancWest argues that because there is no dispute that plaintiffs were customers of Linge's while Linge was employed by BancWest, the Sparks are considered 'customers' of BancWest for the purpose of compelling arbitration.

In cases hinging on this second element, courts have been reluctant to narrowly construe the definition of "customer." In *John Hancock Life Ins. Co. v. Wilson,* 254 F. 3d 48, 59 (2d Cir. 2001), the court stated that "the NASD Code defines 'customer broadly excluding only 'a broker or dealer.'" *Id.* at 59 ( citing Rule 0120(g)). In addition, the courts have held that "when an investor deals with a member's agent or representative, the investor deals with the member." *Multi-Financial Securities Corp. v. King*, 386 F.3d 1364, 1370 (11th Cir. 2004). In *King*, the plaintiff invested with IFG Securities Inc., a NASD member. *Id.* at 1364. The Kings lost their investment when they followed the advice of the member's agent and unknowingly invested in a company not approved by IFG. *Id.* Even though the agent acted independently of its member, the court held that the Kings were customers of the member. *Id.* at 1370.

In *O.N. Equity Sales Co. v. Samuels*, the court further explained that:

> [I]nvestors "are customers under the applicable
> NASD Rules because it is undisputed that they were
> customers of the [representative], and that [the

> representative] was an associated person with [the member]." . . . [I]t [is] "irrelevant" that the investors invested with an unrelated company and that their only connection to the member was through an intermediary.

2007 WL 4237013, 85-86 (M.D. Cal. Nov. 30, 2007) (citing *Mony Securities Corp.*, 390 F.3d at 1344-46.)

Likewise, in this case, the Sparks dealt with Linge, who was an associated member of BancWest. Although Linge acted independently of BancWest in investing the Sparks' money with an "unrelated company," the Sparks are still considered a customer of BancWest for purposes of determining the arbitrability of the present claims.

The third element of Rule 12200 of the NASD Code requires the dispute to "arise in connection with the business activities of the member." BancWest argues that "claims of inadequate supervision of an associated person 'arise in connection with the member's business.'" *World Group Securities, Inc. v. Sanders*, 2006 WL 1278738 (D. Utah May 8, 2006). Furthermore, the NASD requires that its members supervise the activities of their associated persons as part of their business activities. NASD Code of Conduct Rule 3010. In *King,* the court concluded that "King's claim of negligent supervision satisfies the Code's [third] arbitration condition." *King*, 386 F.3d at 1370; *John Hancock*, 254 F.3d at 58-59; *MONY Secs. Corp. v. Bornstein*, 250 F. Supp. 2d 1352, 1357 (M. D. Fla. 2003); *First Montauk Secs. Corp. v. Four Mile Ranch Dev. Co., Inc.,* 65 F. Supp. 2d 1371, 1379 (S. D. Fla. 1999.) The court concludes that the Sparks' claims against BancWest and Linge, as alleged, fall within BancWest's and/or Linge's business activities.

Many of the Sparks arguments in opposition to arbitration focus on BancWest's affirmative defenses distancing itself from Linge's actions. But, "'in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.'" *Local 5-857*, 320 F.3d at 1126 (quoting *AT&T*, 475 U.S. at 649). The court concludes that there is a binding arbitration agreement as to any controversy arising between the Sparks and BancWest and Linge and all of the requirements under the NASD Code are met as to the Sparks' claims against BancWest and Linge. Accordingly, the court grants BancWest's and Linge's motions to compel arbitration before FINRA.

*II. Motion to Stay Claims Against BOTW*

Although BOTW is not a signatory to the arbitration agreement and cannot compel arbitration of the claims against it, BOTW seeks a stay of the claims against it pending the arbitration of the claims against BancWest and Linge. The Sparks oppose a stay, relying on *Mendez v. Puerto Rican International Companies, Inc.,* 553 F.3d 709 (3rd Cir. 2009), which states that a non-signatory should not be rewarded a stay pending arbitration unless "it committed itself to arbitrate one or more issues in suit." *Id.* at 715.

At the hearing, however, BOTW agreed to arbitrate all of the claims against it with the Sparks. The Sparks did not respond as to whether they would agree to include BOTW in the arbitration.[1] In any event, the *Mendez* decision cites to the Supreme Court ruling in *Landis v. North American Co.*, where the Court held that "in some cases it may be advisable to stay

---

[1] In the event that the parties agree to include BOTW in the FINRA arbitration, the court requests that they inform the court of such agreement.

9

litigation among the non-arbitrating parties pending the outcome of arbitration. " *Id.* at 712 (citing *Landis v. North American Co.,* 299 U.S. 248 (1936). "[T]hat decision is left to the district court." *Id.* Under *Landis*, therefore, the district court has the inherent power to invoke its discretion to stay the action. *See Cirus Marketing Board of Israel v. J Lauritzen A/S,* 943 F.2d 220 (2d. Cir. 1991); *Waste Management, Inc., v. Residuos Inustriales Multiquim, S/A.*, 372 F.3d 339 (5th Cir. 2004).

One court has recognized that in determining whether to exercise such discretion, the court must consider whether the party seeking the stay will suffer "hardship or inequity" if they are required to proceed with litigation. *Nederlands Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 442 (2d. Cir. 1964). In *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511 (10th Cir. 1995), the Tenth Circuit recognized that staying the claims as to a non-arbitrating party "is based upon considerations of judicial efficiency." *Id.* at 1518. Similarly, other courts have recognized that there are at least three relevant factors: (1) whether the stay "would promote judicial economy"; (2) whether the stay would avoid "possible inconsistent results"; and (3) whether the stay "would not work undue hardship or prejudice" against the plaintiff. *Meadows Indem. Co. Ltd. v. Baccala & Shoop Ins. Servs., Inc.*, 760 F. Supp. 1036, 1045 (E.D.N.Y. 1991).

BOTW argues that it will suffer hardship or inequity if the court does not stay the claims against it pending arbitration based on the possibility of inconsistent rulings and burdensome and duplicative discovery. In addition to the economic hardship BOTW claims it will face if the same witnesses and employees are required to participate in nearly identical lawsuits, judicial economy is better served by having the FINRA action proceed first.

In *Evergreen Holdings, Inc. v. Sequoia Global, Inc.*, the court held that because the plaintiffs' claim emanated directly from the foundational claim that was pending in arbitration, a stay of the court proceedings was warranted. 2008 WL 4723008 (W.D. Okla. Oct. 23, 2008). The court recognized that "a stay will also promote judicial economy as a resolution of the arbitration may resolve portions or all of this action." *Id.* at *3.

Similarly, the court concludes that a stay of the claims against BOTW would promote judicial economy because a resolution of the Spark's claims against BancWest and Linge may also resolve all or a significant portion of the Sparks' claims against BOTW. The court also concludes that it would be inappropriate to proceed with the claims against BOTW in this case while the FINRA arbitration proceeds because a potential for inconsistent rulings exists and the expense of duplicative discovery is unnecessary. The claims against BOTW are essentially derivative of the claims against BancWest and Linge. Moreover, the court finds no prejudice to the Sparks as a result of staying the claims against BOTW pending the FINRA arbitration with BancWest and Linge. Accordingly, the court grants BOTW's motion to stay the claims against it pending FINRA arbitration of the claims against BancWest and Linge.

## CONCLUSION

For the reasons stated above, the court GRANTS BancWest and Linge's Motion to Compel Arbitration and dismisses the claims against those parties without prejudice so that they can be pursued in FINRA arbitration. The court further GRANTS BOTW's Motion to Stay the proceedings against it pending the arbitration against BancWest and Linge. When the arbitration is completed, the parties shall inform the court of whether it is necessary to lift the stay.

DATED this 2d day of September, 2009.

_____
DALE A. KIMBALL
United States District Judge